IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SHARITA GAINES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-10940 |
| | ) | |
| CITY OF CHICAGO, | ) | |
| CHICAGO POLICE OFFICERS | ) | |
| PETER FLEMING (Star No. 6063), | ) | |
| MICHAEL ROMAN (Star No. 12008), | ) | |
| MASUD HAIDARI (Star No. 4663), | ) | |
| MARCO DI FRANCO (Star No. 19132), | ) | |
| HERBERT BETANCOURT (Star No. 16976), | ) | |
| JOHN HAMILTON (Star No. 2329), | ) | |
| VERLISHER SYAS (Star No. 19154), | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT**

NOW COMES Plaintiff, SHARITA GAINES ("Plaintiff" or "Plaintiff Gaines"), by her attorneys, Barney & Hourihane, LLP and the Law Office of Timothy J. Fiscella, and complaining of Defendants, CITY OF CHICAGO ("City") and CHICAGO POLICE OFFICERS PETER FLEMING (Star No. 6063), MICHAEL ROMAN (Star No. 12008), MASUD HAIDARI (Star No. 4663), MARCO DI FRANCO (Star No. 19132), HERBERT BETANCOURT (Star No. 16976), JOHN HAMILTON (Star No. 2329), and VERLISHER SYAS (Star No. 19154) (referred to collectively as "Defendant Officers"), states as follows:

## Introduction

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution.

## Jurisdiction and Venue

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1343(a), the Constitution of the United States, and this Court's supplemental jurisdiction powers.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within district.

## Parties

4. Plaintiff, Sharita Gaines, is the mother of a one-year old minor child (referred to herein as "M.G."). She is employed as a Direct Support Professional by Neumann Family Services, a social services organization for individuals with intellectual and developmental disabilities, and is resident of Chicago Illinois, within the Northern District of Illinois, Eastern Division.

5. On information and belief, Defendant Officers were at the time of the events complained of herein employed by the City of Chicago as police officers.

6. The City of Chicago is a duly incorporated municipal corporation within the Northern District of Illinois and is the employer and principal of the Defendant Officers.

7. At all times material to this Complaint, the Defendant Officers were acting in the scope of their employment and under color of state law, ordinance, and/or regulation, statutes, custom, and usage of the City of Chicago.

## Background

8. On or about May 13, 2016, at approximately 8:30 P.M., Plaintiff was present in her residence located on the 7500 block of South Coles Avenue with her 1 year old daughter M.G. when Defendant Officers arrived at her apartment building.

9. Plaintiff's apartment building is a residential multi-unit building with more than one dozen separate apartment units.

10. Defendant Officers had previously obtained a search warrant for Plaintiff's apartment unit by providing the issuing magistrate false information either knowing the information was false or in reckless disregard of the truth.

11. The stated purpose of the warrant was to search for an unnamed individual with the purported alias "AK." According to the warrant description, "AK" was a black male; approximately 35 years old; of medium skin complexion; 5'8" tall and 180 pounds in weight; and had black hair and brown eyes.

12. Plaintiff and minor M.G. were the only individuals living at the named residence on May 13, 2016. Moreover, Plaintiff had just moved into the unit as of April 1,

2016 and no one fitting the description of "A.K." had ever been to Plaintiff's residence.

13. Additionally, new locks were installed on Plaintiff's residence by building management prior to Plaintiff taking possession of the apartment in April of 2016 and Plaintiff was the only person with access to keys to the residence.

14. At approximately 8:30 P.M. on May 13, 2016, Plaintiff had recently returned home from work and was preparing for bed; Plaintiff was using the bathroom and her minor child was asleep in the front bedroom.

15. Plaintiff was dressed in only a t-shirt and was not wearing any pants or underwear.

16. At that time, Defendant Officers began banging on Plaintiff's rear door.

17. Prior to attempting to gain access to Plaintiff's apartment, Defendant Officers encountered an individual who was inside the apartment complex.

18. According to Defendant Officers' police reports, this individual informed Defendant Officers that he was there to buy drugs from in individual named "A.K."

19. Information provided by this individual to Defendant Officers further showed that Plaintiff's residence was not in fact the residence where "A.K." had been allegedly engaging in illegal narcotics transactions.

20. Despite these facts, Defendant Officers proceeded to bang on Plaintiff's door in an attempt to gain entry.

21. When Plaintiff attempted to inquire as to who at the door, one of Defendant Officers responded with the name of a male, which Plaintiff did not recognize.

22. At no point while banging on Plaintiff's door did Defendant Officers announce that they were members of the Chicago Police Department.

23. At the time, Plaintiff believed that the individuals banging on her door were attempting to break into her apartment, so she did not open the door.

24. Without warning, Defendant Officers then broke down Plaintiff's door and stormed into the apartment.

25. One or more of Defendant Officers had their firearms un-holstered, raised, and pointed in Plaintiff's direction.

26. In addition, Defendant Officers were dressed in tactical gear at the time of entry that did not clearly identify themselves as police officers.

27. Plaintiff, believing that she and her daughter were in danger, attempted to run from the rear door to the front bedroom where her daughter was located.

28. As she attempted to run, Plaintiff heard one of Defendant Officers yell, "Get the fuck on the floor," as he pointed what appeared to be an assault rifle at Plaintiff.

29. In response, Plaintiff immediately laid face down on the living room floor and spread her arms and hands out.

30. As Plaintiff laid on the ground, Plaintiff's entire lower-half was exposed to view, including her bare buttocks and genitalia.

31. Defendants began searching the various rooms while Plaintiff laid on the floor with her lower body exposed.

32. At least one of the Defendant Officers had his firearm un-holstered and in the ready position as he entered the bedroom where Plaintiff's daughter slept.

33. After Plaintiff had been laying face down with her private areas exposed for approximately 5 minutes, Defendant Officers allowed Plaintiff to stand up and put pants on.

34. One Defendant Officer retrieved Plaintiff's daughter and allowed Plaintiff to take her.

35. Within minutes of Defendant Officers' entry, Plaintiff overheard Defendant Officers openly discussing that they had the wrong apartment.

36. In addition, Plaintiff overheard a telephone conversation in which one of Defendant Officers stated during the conversation that an undercover officer had a made a narcotics purchase from A.K.; that one of Defendant Officers had communicated recently with A.K.; and that Defendant Officers knew that A.K. was somewhere in the apartment complex.

37. Despite knowing that Plaintiff's apartment had no connection to any criminal activity, Defendant Officers remained in Plaintiff's apartment for more than one hour and continued searching the residence during that time.

38. Plaintiff was detained in the living room and was not allowed to leave while the Defendant Officers were present.

39. After finding no contraband or indication of criminal activity of any kind, Defendant Officers eventually left.

40. Before Defendant Officers left the apartment, Plaintiff noticed that her back door was broken and asked Defendant Officers if they were going to fix it.

41. In response, Defendant Officers advised Plaintiff that she would have to take the damage up with her building management.

42. Plaintiff was forced to sleep in her apartment that night with her one-year old daughter while the back door broken and unlocked.

### Count I
### 42 U.S.C. § 1983: Unlawful Entry/Unreasonable Search

43. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

44. As described in the preceding paragraphs, Defendant Officers unlawfully entered Plaintiff's residence based upon a warrant that they had obtained by providing information to the magistrate that they knew was false or with a reckless disregard for the truth.

45. Defendants knew that did not have probable cause to believe that Plaintiff's residence was the location of any prior or continuing criminal activity, yet still broke down her door, stormed the apartment, detained her and her child, and searched the premises.

46. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, specifically the Fourth and Fourteenth Amendments to the United States Constitution, and hence 42 U.S.C. § 1983.

47. With regard to the procurement of the search warrant purporting to authorize the search of Plaintiff's premises, said search warrant was unreasonable and unconstitutional for one or more of the following reasons:
    a. provided information in support of the search warrant knowing that information was false or in reckless disregard of the truth;
    b. relied upon an informant who had not previously provided reliable information in order to obtain the warrant;
    c. failed to independently verify information indicative of criminal activity provided by the confidential informant prior to obtaining the warrant;
    d. failed to advise the Assistant State's Attorney approving the warrant application and the judge issuing the warrant of all available relevant information related to Plaintiff's residence, "AK", and Plaintiff;
    e. failed to conduct a search of available databases for any information connecting "AK" to Plaintiff's residence;
    f. failed to provide truthful information to the Assistant State's Attorney approving the warrant application and the judge issuing the warrant regarding all information provided by any alleged confidential information and corroboration of that information or lack thereof; and/or
    g. failed to conduct a search of available databases for information related to the identity of the owner of Plaintiff's residence.
48. As a result of the unjustified violation of Plaintiff's rights, Plaintiff has suffered injury, including emotional distress and damage to her residence.

## Count II
## 42 U.S.C. § 1983: Failure to Intervene

49. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

50. As described more fully above, one or more of the Defendant Officers had a reasonable opportunity to prevent the violations of Plaintiff's constitutional rights as set forth above.

51. As a result of the Defendant Officers' failure to intervene, Plaintiff suffered damage to her residence, as well as emotional distress.

52. The Defendant Officers' actions were undertaken intentionally with malice and reckless indifference to Plaintiff's rights.

## Count III
## U.S.C. § 1983: Conspiracy to Commit Constitutional Violations

33. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

53. As discussed in greater detail above, some or all of the Defendant Officers conspired with each other and/or with members of their department to cause damage to the Plaintiffs by acting in concert to obtain the unlawfully procured search warrant, continuing to execute said warrant knowing they were at the wrong location, acting in concert to detain Plaintiff knowing they did not have probable cause or legal justification to do so, agreeing not to report each other after witnessing and/or committing the constitutional violations described above and agreeing not to generate reports documenting their conduct to cover-up their own and each other's misconduct.

54. The aforementioned actions of the Defendant Officers were the direct and proximate cause of the violations of the United States Constitution discussed above, and the attendant injury and emotional distress resulting therefrom.

## Count IV
### Unlawful Seizure: 42 U.S.C. § 1983

55. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

56. As described in the preceding paragraphs, the Defendant Officers unlawfully detained Plaintiff in violation of the Fourth Amendment without legal justification or probable cause.

57. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, specifically, the Plaintiff's.

58. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, specifically the First, Fourth and Fourteenth Amendments to the United States Constitution, and hence 42 U.S.C. § 1983.

59. As a result of the unjustified violation of Plaintiff's rights by the Defendant Officer, Plaintiff has suffered injury, including emotional distress.

## Count V
### *Monell* Claim: U.S.C. § 1983

60. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

61. The misconduct described in this Count was undertaken pursuant to the policy and practice of the City of Chicago by its Police Department in that:

a. As a matter of both policy and practice, the Chicago Police Department directly encourages, and is thereby the moving force behind, the very type of misconduct at issue here by failing to adequately train, supervise and control its officers, such that is failure to do so manifests deliberate indifference;

b. As a matter of policy and practice, the Chicago Police Department facilitates the very type of misconduct at issue here by failing to adequately punish and discipline prior instances of similar misconduct, thereby leading Chicago Police Officers to believe their actions will never be scrutinized and, in that way, directly encouraging future abuses such as those affecting Plaintiff;

c. Generally, as a matter of widespread practice so prevalent as to comprise municipal policy, officers of the Chicago Police Department abuse citizens in a manner similar to that alleged by Plaintiffs in this Count on a frequent basis, yet the Chicago Police Department makes findings of wrongdoing in a disproportionately small number of cases;

d. Municipal policymakers are aware of (and condone and facilitate by their inaction) a "code of silence" in the Chicago Police Department by which officers fail to report misconduct committed by other officers, such as the misconduct at issue in this case;

e. The City of Chicago has failed to act to remedy the patterns of abuse described in the preceding sub-paragraphs, despite actual knowledge of the same, thereby causing the types of injuries alleged here.

43. In addition to the facts cited above, Plaintiff also submits the following in support of her *Monell* claim:

   a. The verdict in *Obrycka et al. v. City Of Chicago et al.,* No. 07 2372 (N.D. Ill. Nov. 13, 2012), in which a jury found that a code of silence and/or a widespread custom of failing to adequately investigate, discipline, and supervise officers existed within the ranks of the Chicago Police Department(Case: 1:15-CV-07029, Document #48 at Page 4 of 14);

   b. A statement made by Chicago Mayor Rahm Emanuel during a December 2015 press conference acknowledging a prevailing "code of silence" within the Chicago Police Department;

   c. A statement made by Chicago Mayor Rahm Emanuel in December of 2015 during an appearance on "Chicago Tonight" wherein he directly acknowledged that a "code of silence" exists within the City of Chicago and, specifically, the Chicago Police Department.

   a. A recent publication by the Chicago Reporter that analyzed civil rights cases against Defendant City of Chicago found at least 19 other cases where officers executing a search warrant searched the wrong house or apartment which were settled for a total of approximately $840,000.

b. Public records show the Defendant officers named in this Complaint have been subject to numerous prior complaints for similar misconduct yet never once disciplined. For instance, upon information and belief:
    i. Defendant Haidari has at least 14 prior allegations of misconduct and at least 3 involve illegal searches. He has never once been disciplined.
    ii. Defendant Hamilton has at least 1 prior allegation of misconduct for an illegal search for which he was not disciplined.
    iii. Defendant Di Franco has at least 7 prior allegations of misconduct. Three involve illegal searches and he has never been disciplined.
    iv. Defendant Betancourt has at least 7 prior allegations of misconduct, including one related to an illegal search, for which he was never disciplined.
    v. Defendant Syas has at least 3 prior allegations of misconduct, all which involved illegal searches and she was never disciplined.
    vi. Defendant Fleming has accrued at least 8 complaints for misconduct, 6 involving illegal searches, and none resulted in discipline.
62. Despite a clear and troubling pattern of misuse and abuse in its warrant procurement and execution procedures by its officers, Defendant City of Chicago has failed to remedy these abuses, properly train its officers, or adequately discipline those who commit the aforementioned violations.

63. As a direct result of the aforementioned, which was the moving force behind the Constitutional violations set forth above, Plaintiff suffered damages, including emotional distress.

## Count VI
### State Law Claim: False Imprisonment

64. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

65. Plaintiff was imprisoned by one or more Defendant Officers, and thereby had her liberty to move about unlawfully restrained, despite the Defendant Officers' knowledge that there was no probable cause for doing so.

66. The actions of the Defendant Officers were undertaken intentionally, with malice and reckless indifference to Plaintiff's rights.

67. As a result of the wrongful infringement of Plaintiff's rights, undertaken pursuant to the City of Chicago's policy and practice as described more fully above, Plaintiffs have, as a direct and proximate cause, suffered injury, including emotional distress.

68. As described above, the Defendant Officers conduct was undertaken within the scope of their employment such that their employer, City of Chicago, is liable for their actions.

## Count VII
### State Law Claim: *Respondeat Superior*

69. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

70. In committing the acts alleged in the preceding paragraphs, the Defendant Officers were members and agents of the Chicago Police Department acting at all relevant times within the scope of their employment.

71. Defendant City of Chicago is liable as principal for all torts committed by its agents.

## Count VIII
## State Law Claim: Indemnification

72. Plaintiff re-alleges each of the above paragraphs as if fully stated herein.

73. Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities.

74. The Defendant Officers are employees of the Chicago Police Department, who acted within the scope of their employment in committing the misconduct described herein.

**WHEREFORE**, Plaintiff, SHARITA GAINES, respectfully request that this Honorable Court enter judgment in her favor and against Defendants, CITY OF CHICAGO and the DEFENDANT OFFICERS named above, awarding compensatory damages and attorneys' fees, along with punitive damages against the DEFENDANT OFFICERS in their individual capacity, as well as any other relief this Court deems just and appropriate.

## Jury Demand

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully Submitted,

s/ Ian Barney
Attorney for Plaintiff
Barney & Hourihane, LLP
874 Green Bay Rd., Suite 320
Winnetka, Illinois 60093
Tel: 312-854-0906

s/ Timothy J. Fiscella
Attorney for Plaintiff
Law Office of Timothy J. Fiscella
201 East Ogden, Suite 215
Hinsdale, Illinois 60521
Tel: 630-708-6690