IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| SHARITA GAINES, | ) | |
| Plaintiff, | ) | No. 16-cv-10940 |
| | ) | |
| v. | ) | Judge Jorge L. Alonso |
| | ) | Magistrate Judge Jeffrey T. Gilbert |
| CITY OF CHICAGO, et. al., | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COMES Plaintiff, SHARITA GAINES, by and through her attorneys, and herein responds to Defendants' Motion for Summary Judgment and offers this memorandum of law in opposition:

**I. Defendants' Motion Should Be Denied for Failure to Comply with Local Rule 56.1, and Any Arguments in Favor of Summary Judgment Should Be Deemed Waived.**

Defendants filed a combined Motion for Summary Judgment and Rule 56.1 Statement of Facts. (Doc. 144). No memorandum of law supporting the motion was filed. Initially, because Defendants' motion fails to comply with Local Rule 56.1, the Defendants' motion should be denied. Alternatively, the Court should deem any arguments that could be made in favor of summary judgment waived, as Defendants failed to develop any arguments or cite to any authority supporting their request for summary judgment.

Local Rule 56.1(a) states that a party moving for summary judgment must file a supporting memorandum of law and a statement of undisputed material facts

1

which entitle the moving party to a judgment as a matter of law, to include a description of the parties and all facts supporting venue and jurisdiction. LR 56.1(a)(1)–(3). The failure to submit a statement consistent with the rule constitutes grounds for denial of the motion. L.R. 56.1(a); Alonso, J. Case Procedures, *available at* https://goo.gl/jcMFCg.

Here, Defendants failed to file a memorandum of law in support of their motion. Moreover, no basis is stated in the motion for why summary judgment is appropriate. In addition, Defendants' Statement of Facts does not contain the required description of the parties and facts supporting venue and jurisdiction. Defendants failure to comply with Local Rule 56.1 should result in their motion being denied. *See Modrowski v. Pigatto*, 712 F.3d 1166, 1169 (7th Cir. 2013).

In addition, Defendants failed to develop any arguments or cite to any authority in support of their motion. Arguments that are undeveloped or unsupported by citations to authority are deemed waived. *Weinstein v. Schwartz*, 422 F.3d 476, 477 at n.1 (7th Cir. 2005); *see also Perry v. Sheet Metal Workers' Local No. 73*, 07-CV-635 (N.D. Ill. March 24, 2008) (Cole, M.J. Memorandum Op. & Order), 2008 WL 789102. "[E]ven pro se litigants must include legal argument and cite supporting authority in their briefs." *Id.* (quoting *Mathis v. New York Life Ins. Co.,* 133 F.3d 546, 548 (7th Cir .1998)) (alteration in original). This Court need not consider any argument in favor of summary judgment that is not supported by relevant law. *Swoope v. Gary Comm. School Corp.*, 2:2010-CV-423 (N.D. Ind. March 30, 2015) (Lozano, J., Opinion & Order), 2015 WL 1443172.

Because the Defendants have completely failed to put forth any argument in favor of summary judgment, and failed to support their motion with relevant authority, the Court should deem any arguments in favor of summary judgment waived (or forfeited), and deny the motion.

## II. Summary Judgment Should be Denied Because Disputes of Material Fact Exist.

Alternatively, the Court should deny Defendants' motion because genuine issues of material fact exist. Summary judgment is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court must construe the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The burden of establishing a lack of any genuine issue of material fact rests on the movant. *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir.2001). "The nonmoving party may withstand the motion merely by producing circumstantial evidence which would reasonably allow a trier of fact on inference to resolve the issue of material fact in that party's favor." *Lundquist v. AMerican Honda Motor Co., Inc.*, 773 F. Supp. 1195, 1203 (W.D. Wis. 1988) (citing *Parker v. FNMA*, 741 F.2d 975, 980 (7th Cir. 1984)).

### A. Factual Background

On May 13, 2016, at approximately 8:30 P.M., Plaintiff Gaines was inside her apartment located at 7517 S. Coles Avenue, #2B in Chicago when the Defendant

Officers executed a search warrant on her residence. (Def. Ex. N–Dep. Gaines, pp. 43-47, 100, 131). For approximately forty-five minutes to one hour, the officers remained in the apartment. (Def. Ex. B–Dep. Fleming, p. 130-31). They searched the apartment and questioned Gaines about a man named "AK," whom she did not know. (Def. Ex. N–Dep. Gaines, p. 55). Defendant Officers did not find any drugs or other illegal contraband during the search. (Def. Ex. B–Dep. Fleming 126-27). The purpose of the search was to locate an individual with the alias "AK," and to seize any controlled substances or related contraband. (Def. Ex. D–Complaint for Search Warrant). The search warrant affidavit described AK as a black male who was approximately 35 years old. (Def. Ex. D–Complaint for Search Warrant).

Defendant Officer Fleming stated in his search warrant affidavit that he was informed by a "concerned citizen" that crack and heroin were being sold at 7517 S. Coles Avenue, 2B in Chicago, Illinois. (Def. Ex. D–Complaint for Search Warrant). Per the affidavit, after receiving this information Officer Fleming went to the location of the building and conducted surveillance, during which he observed numerous people walk up to the rear of the residence. (Def. Ex. D–Complaint for Search Warrant). He stated: "They would walk up to the second floor and remain at the door for a short period of time. They would then walk back down the stairs and exit from the side gate. This is a common practice for someone selling narcotics from within the confines of a dwelling." (Def. Ex. D–Complaint for Search Warrant). Per the affidavit, Fleming then directed a registered confidential informant to conduct two "controlled buys" of narcotics at the residence. (Def. Ex. D–Complaint for

4

Search Warrant). According to the Complaint for Search Warrant, the CI told Officer Fleming that both controlled buys occurred at the rear door to an apartment on the second floor, which had "2B" displayed on it, and that a man named AK sold the drugs to the CI. (Def. Ex. D–Complaint for Search Warrant).

### B. Procurement of Search Warrant by Use of False Information (Claim I).

The Fourth Amendment protects individuals from unreasonable searches and seizures. U.S. Const., amend. IV. Generally, a search is not reasonable unless the government has a warrant supported by probable cause, or an exception to the warrant requirement exists. *United States v. Yang*, 286 F.3d 940, 944 (7th Cir.2002). In *Franks v. Delaware*, the United States Supreme Court recognized that a Fourth Amendment violation occurs where an officer obtains a warrant by knowingly and intentionally, or with reckless disregard for the truth, including false information in the warrant affidavit, and that information is necessary to the finding of probable cause. *See Franks v. Delaware*, 438 U.S. 154, 155-6 (1978). The *Franks* standard applies to civil actions seeking damages under 42 U.S.C. § 1983. *Perlman v. City of Chicago*, 801 F.2d 262, 264-65 (1986). The question of whether officers are entitled to qualified immunity with respect to a *Franks* violation is considered concurrently with the question of whether a *Franks* violation occurred. *See Malley v. Briggs*, 475 U.S. 335 (1986); *Lawson v. Veruchi*, 637 F.3d 699, 705 (7th Cir. 2011).

Here, Plaintiff contends that Officer Fleming included the following false information in his search warrant affidavit knowing it was false: that he received

5

information from a "concerned citizen" that drugs were being sold at 7517 S. Coles Ave., 2B; that the CI told him the door to the apartment where she purchased drugs had "2B" displayed on it; and that, during surveillance, Officer Fleming observed individuals go to "the door" (*i.e.* Gaines' door), stand there, and then return down the back staircase. Whether Fleming lied in the search warrant affidavit is in dispute.

First, Plaintiff has put in dispute whether Officer Fleming received information from a "concerned citizen" that implicated Plaintiff's apartment in drug dealing. The depositions of Officer Fleming and Officer DiFranco revealed that the "concerned citizen" is actually a drug using, drug dealing unregistered informant with a criminal background. (Def. Ex. B–Dep. Fleming, pp. 15-17, 26; Def. Ex. J–Dep. DiFranco, pp. 12-14). This person had previously provided information about criminal activity to Officer Fleming, and had been compensated with cigarettes. (Def. Ex. B–Dep. Fleming, pp. 15-17, 26). In fact, here, the "concerned citizen" was informing on the person from whom she bought drugs. (Def. Ex. B–Dep. Fleming, pp. 15-17, 26). Officer Fleming's failure to disclose this information in the warrant affidavit was a gross and material misrepresentation intended to foster the misconception that a disinterested citizen had provided him with valuable information.

In addition, Officer Fleming's own police report refutes the information Officer Fleming purported to have received from the "concerned citizen." Specifically. Officer Fleming's supplementary narcotics report, drafted in May of

6

2016, states that he received information that drug dealing was taking place "*from the second floor*," not 2B. (Def. Ex. E–Supp. Report May 11 at 2). In addition, Officer Fleming testified at his deposition that he could not recall whether the "concerned citizen" told him Unit 2B, or whether she just pointed out the building. (Def. Ex. B–Dep. Fleming, p. 25, lines 7-8). He could also not recall whether the concerned citizen ever actually went into a specific apartment. (Def. Ex. B–Dep. Fleming, p. 24, lines 26-28). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Def. Ex. H–Dep. CI, p. 21, lines 1-22). Officer Fleming surely would have shared the unit number with the CI if he had that information.

Next, Plaintiff has put in dispute whether Officer Fleming observed people engage in suspicious activity at Plaintiff's apartment door, as he claimed. Specifically, Officer Fleming stated in the search warrant affidavit that, during surveillance, he was able to observe people walk up the rear of the building, wait at "the door," and then return back down the rear staircase. (Def. Ex. D–Complaint for Search Warrant). In his deposition, however, Officer Fleming acknowledged, "I would see them enter into the gateway, and then pretty much come out of my view and be obstructed." (Def. Ex. B–Dep. Fleming, p. 77, lines 13-15). Photographs of the north of the building also illustrate that it is impossible to see any door on the second floor landing because the rear staircase blocks the view. (Pl. Ex. 2–Photos). Officer Fleming's lie was material because he claimed the activity he described was consistent with someone "selling narcotics from within the confines of a dwelling."

7

(Def. Ex. D–Complaint for Search Warrant). In addition, there are actually two doors on the second floor rear landing—one for 2A and one for 2B—a critical fact omitted from the search warrant affidavit. (Def. Ex. B–Dep. Fleming, p. 105, lines 1-2).

Next, Plaintiff has put in dispute whether Officer Fleming lied in his search warrant affidavit when he stated the CI told him she purchased drugs from an apartment that had 2B displayed on the rear door. Facts demonstrating that Fleming lied are: (a) 2B was *not* displayed on Plaintiff's rear door, so it is impossible that the CI made that observation; (b) the evidence is overwhelming that the drug dealing was occurring at Unit 2A, not Unit 2B; (c) the CI had no incentive to provide false information; and (d) Officer Fleming provided other false and misleading information which severely undercuts his credibility.

First, unit numbers were not displayed on the rear door to any units at Gaines' building, including hers. (Pl. Ex. 5–Dep. Feldman, pp. 19-20; Def. Ex. N–Gaines Dep., p. 137, lines 12-21). Thus, it is impossible for the CI to have made the observation attributed to her by Officer Fleming. ███████████████████████████████████████████████████████ ████████ (Def. Ex. H–CI Dep., p 38, lines 4-24). She is an active CI working with Officer Fleming, and so has a clear motive to lie for him. (Def. Ex. B–Dep. Fleming, pp. 136, lines 21-23). ███████████████████████████████████████ ███████████████████████████████████ (Def. Ex. H–Dep. CI, p 3, p. 8, lines 1-4). ███████████████████████████████████████

8

███████████████████████████████████████████

███████████████████████████████████████████

████████████████████. (Def. Ex. H–Dep. CI, pp. 30-31). ████████

███████████████████████████████████████████

████████████████. (Def. Ex. H–Dep. CI, pp. 30-31). ████████

███████████████████████████████████████████

█████████████████████████████████. (Def. Ex. H–Dep. CI, p. 39, lines 7-9; Pl. Ex. 5–Dep. Feldman, pp. 19-20).

Second, in further support that Officer Fleming lied about being told "2B" was on the door, the drug dealing was actually taking place at Unit 2A, not Unit 2B. To that end, the target of the search warrant, "AK," is an individual named Llewain Hardin, the lessee at Unit 2A (Pl. Ex. 4–Fleming Interrog., p. 5; Pl. Ex. 3–Lease 2A). Gaines observed a lot of traffic in and out of Unit 2A and complained to building management (Def. Ex. N–Dep. Gaines, pp. 28-31, 138-40). The building maintenance man, Parrish, observed the same high volume of traffic in and out of Unit 2A and also complained to building management about it. (Def. Ex. I–Dep. Allen. pp. 18-21). Further, no one had access to Gaines' apartment except Gaines and Parrish. (Def. Ex. N–Dep. Gaines, pp. 21, lines 16-18; Def. Ex. I– Dep. Allen p. 28, lines 11-14 and p. 31, lines 1-16).

Third, Officer Fleming testified that he does not pay the CI unless her information leads to a fruitful search, so there is no incentive for the CI to lie about

9

which door she purchased narcotics from or to say the door had a unit number on it when it did not. (Def. Ex. B–Dep. Fleming, pp. 63, 137, lines 12-19).

Fourth, Officer Fleming has serious credibility issues and has been found to have lied and misled the judge issuing the warrant in multiple ways. He drafted the Complaint for Search Warrant to make it appear that the "concerned citizen" had provided a unit number, when she had not; and the "concerned citizen" was actually an unregistered informant who was both a drug user and drug dealer. Also, Officer Fleming falsely stated that he observed people walk up the rear staircase and stand at "the door." It also appears that there is unaccounted for money in these controlled buys. On that point, Officer Fleming's own report states that he gave the CI $80 to purchase narcotics on May 11 and $60 to purchase narcotics on May 12. (Def. Ex. E–Supp. Report May 11; Def. Ex. F–Supp. Report May 12). He reported that the CI had no money when she returned from the buys. (Def. Ex. E–Supp. Report May 11; Def. Ex. F–Supp. Report May 12). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. Ex. H–CI Dep., p. 40, lines 21-23, and p. 42, lines 7-12). A reasonable jury could infer that Officer Fleming allowed the CI to keep the surplus money from the buys and then concealed the payment.

Given the evidence discussed above, there is a genuine issue as to whether the statements in the Complaint for Search Warrant concerning 2B were made knowing they were false.[1] Summary judgment should therefore be denied.

---

[1] Officer Fleming's statement regarding 2B was material because without the specific location, the application would be insufficient to establish probable cause. *See e.g.*

### C. Once Defendants Saw that "2B" was Not Displayed on the Door, Any Probable Cause that Previously Existed Had Dissipated and the Officers Should Not Have Executed the Warrant (Claims I and III).

Generally, a search is not reasonable unless the government has a warrant supported by probable cause, or an exception to the warrant requirement exists. *United States v. Yang*, 286 F.3d 940, 944 (7th Cir.2002). A police officer may not close his or her eyes to facts that would clarify the circumstances of a seizure or search initially based on probable cause. *See BeVier v. Hucal*, 806 F.2d 123, 128 (7th Cir.1986). Indeed, the original grounds supporting probable cause could be disproved by subsequent investigation, or the warrant could become stale based upon discredited information. *United States v. Watson*, 423 U.S. 411, 431, 432 n.5 (1976). Therefore, it is a Fourth Amendment axiom that probable cause may cease to exist after a search warrant is issued. *United States v. Grubbs*, 547 U.S. 90, 96, n.2 (2006); *United States v. Bowling*, 900 F.2d 926, 932 (6th Cir. 1990); *United States v. Wagner*, 989 F.2d 69, 75 (2d Cir. 1993). Determining whether probable cause has dissipated is no different from determining probable cause in general. *See United States v. Jacobs*, 986 F.2d 1231, 1235 (8th Cir.1993).

Here, even if probable cause existed at the time the search warrant was issued, probable cause would have dissipated upon the officers' arrival at the apartment, where they could clearly see that 2B was not on Gaines' door. At that point, the officers would have been required to stop the execution of the search

---

*Donaldson v. United States*, 1993 WL 226432 at 5 (N.D. 1993); *Forman v. Richmond Police Dept.*, 104 F.3d 950, 964 (7th Cir. 1997).

warrant and investigate further. Thus, even if the Court finds that there is no issue of fact with respect to whether Officer Fleming lied about 2B, summary judgment should still be denied as to all Defendants.

### D. Defendant Officers Failed to Knock and Announce Before Entering Plaintiff's Apartment (Claim II).

Under the Fourth Amendment, police officers are generally required to knock and announce their identity and purpose before forcibly entering a home to execute a search warrant. *See Richards v. Wisconsin*, 520 U.S. 385, 387 (1997); *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995). Here, there is a genuine dispute about whether the police knocked and announced their office and purpose before forcibly entering Plaintiff's apartment. Defendants claim they did. (Def. Ex. B–Dep. Fleming, pp. 110-12). Gaines claims they did not. (Def. Ex. N–Dep. Gaines, p. 54). This factual dispute requires that summary judgment be denied.

### E. Defendants Illegally Seized Plaintiff (Claims III, IV, and VII).

Plaintiff has brought a claim for illegal seizure under the Fourth Amendment. A person has been "seized" within the meaning of the Fourth Amendment if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). The Seventh Circuit has held that it is beyond doubt that a person is seized during the execution of a search warrant. *United States v. Burns*, 37 F.3d 276, 279 (7th Cir. 1994).

Here, Gaines was "seized" from the moment Defendants entered her apartment up until the moment they left because no reasonable person would feel

12

free to leave when surrounded by armed police officers inside her own home. As to the legality of the seizure, there are disputes of material fact regarding whether probable cause existed. Those factual disputes are discussed at length above, and incorporated by reference here. Because there are disputes of material fact, summary judgment should be denied on the illegal seizure claims.

### F. False Imprisonment (Claim V).

The common law tort of false imprisonment is defined as "an unreasonable restraint of an individual's liberty, against his will, caused or procured by the defendant." *Hanna v. Marshall Field & Co.*, 279 Ill. App. 3d 784, 793 (1st Dist. 1996) (*quoting Meerbrey v. Marshall Field & Co.*, 139 Ill. 2d 455, 474 (1990)). A plaintiff must make essentially the same showings for a state common law false imprisonment claim as for a Fourth Amendment improper seizure claims. *Irvin v. Kaczmaryn*, 913 F. Supp. 1190, 1201 (N.D. Ill. 1996) (citing *Dutton v. Roo–Mac, Inc.*, 100 Ill. App. 3d 116, 119–20 (2d Dist.1981) (false imprisonment inquiry turns on existence of probable cause for arrest). Thus, a false imprisonment claim survives a motion for summary judgment where there is an issue of material fact as to whether the defendants lacked probable cause to seize the plaintiffs. *Id*.

Here, Gaines was unlawfully restrained when Defendant Officers executed the search warrant by entering her residence, pointing weapons at her, forcing her to the ground, and restraining her freedom of movement. As discussed above, Plaintiff has put in dispute whether probable cause existed for her seizure. She

13

incorporates those arguments here. Given the factual disputes related to probable cause, summary judgment should be denied on this claim.

### G. Conspiracy to Commit Constitutional Violations and Failure to Intervene (Claims V and VI).

To establish a claim for failure to intervene, a Plaintiff must prove (1) that a constitutional violation was committed; and (2) the defendant had a realistic opportunity to prevent it. *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Plaintiff has alleged numerous constitutional violations about which there are genuine disputes of material fact. Each Defendant was present for many, if not all of the alleged violations, and therefore, had a reasonable opportunity to stop and/or prevent them. Summary judgment should therefore be denied with respect to the failure to intervene claim.

Conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means. *Scherer v. Balkema*, 840 F.2d 437, 441 (7th Cir.1988). Plaintiff has alleged that Defendants acted in concert to unlawfully search her home, seize her, and cover up their constitutional violations by submitting false police reports, failing to report each others' misconduct, and testifying falsely throughout these proceedings. Arguments on those points made above are incorporated here by reference. Simply, there are genuine issues of material fact as to whether Defendant Officers in this case violated Plaintiff's constitutional rights. For that reason, and because there is evidence of that Defendant Officers acted in concert with respect to those violations, summary judgment should be denied.

## **CONCLUSION**

WHEREFORE, for the reasons stated in this Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment, Plaintiff's Response to Defendants' Statement of Undisputed Facts, and Plaintiff's Statement of Additional Facts Requiring Denial of Summary Judgment, this Court should deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

*/s/ Ian M. Barney*

BARNEY & HOURIHANE, LLP
874 Green Bay Road, Suite 320
Winnetka, IL 60093
Tel: (312) 854-0906
E: ian@barneyhourihane.com

*/s/ Timothy J. Fiscella*

LAW OFFICE OF TIMOTHY J. FISCELLA
201 E. Ogden, Suite 215
Hinsdale, IL 60521
Tel: (630) 708-6690
E: tjfiscella@tjfiscellalaw.com

*Counsel for Plaintiff*

# CERTIFICATE OF SERVICE

I, Ian M. Barney, hereby certify that on October 9, 2018, I electronically filed the foregoing **PLAINTIFF'S RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

           By:    /s/ *Ian M. Barney*
                   IAN M. BARNEY
                   Barney & Hourihane, LLP
                   874 Green Bay Road, Suite 320
                   Winnetka, IL 60093
                   Tel: (312) 854-0906
                   E: ian@barneyhourihane.com

                   Date: October 9, 2018